UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND,
VACATION & HOLIDAY FUND, TRADE
EDUCATION FUND, AND 401(K)
SAVINGS PLAN, *et al.*,

                  Plaintiffs,

        -against-

M. VASCELLARO, INC.,

                  Defendant.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21 CV 4076 (DG)(CLP)

**POLLAK**, United States Magistrate Judge:

On July 20, 2021, plaintiffs, Trustees of the Plumbers Local Union No. 1 Welfare Fund,

Vacation & Holiday Fund, Trade Education Fund, and 401(k) Savings Plan; Trustees of the

United Association National Pension Fund; and Trustees of the International Training Fund

(collectively, "plaintiffs" or "Trustees") commenced this action against M. Vascellaro, Inc.

("defendant" or "Vascellaro"), under Sections 502 and 515 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145; and Sections 301

and 302 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §

185, seeking to collect delinquent employer contributions owed to a group of employee benefit

plans.

Despite proper service of the Complaint upon Vascellaro on July 23, 2021, defendant

failed to answer or otherwise respond to the Complaint.  (Grancio Decl.[1] ¶¶ 5, 8, Ex. Y).  On

---

[1] Citations to "Grancio Decl." refer to the Declaration of Adrianna R. Grancio, in Support of Motion for Default Judgment, dated November 8, 2021, ECF No. 15.

August 16, 2021, plaintiffs requested a Certificate of Default, and on August 24, 2021, the Clerk of Court entered a notation of default.  (See ECF No. 9, 10).  Thereafter, on November 10, 2021, plaintiffs filed a motion for default judgment.  (See ECF No. 11).  Plaintiffs' motion was referred to the undersigned to determine liability and damages and to issue a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that the plaintiffs' motion for default judgment be granted, and that damages be awarded in the amount of $1,224,681.32, plus $4,185.06 in attorney's fees and costs for a total award of $1,228,866.38. The Court also respectfully recommends that plaintiffs be awarded prejudgment interest from October 28, 2021 until the date that this Order is adopted, and any and post-judgment interest that accrues after the entry of judgment.

## FACTUAL BACKGROUND

The Trustees of the Plumbers Local Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Education Fund, and 401(k) Savings Plan (the "Local 1 Funds") are employer and employee trustees of employee benefit plans, within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  (Compl.[2] ¶ 4).  The Local 1 Funds are organized and operated pursuant to collective bargaining agreements in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c).  (Id.)  The Trustees of the United Association National Pension Fund (the "NPF") are employer and employee trustees of a multiemployer employee pension benefit plan, within the meaning of Sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37).  (Id. ¶ 6).  The Trustees of the International Training Fund (the "ITF," together with the NPF, the "National Funds") (the Local 1 Funds and National Funds, collectively, the "Funds") are employer and

---

[2] Citations to "Compl." refer to the Complaint, dated July 20, 2021, ECF No. 1.

employee trustees of a multiemployer welfare benefit plan, within the meaning of sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37).  (Id. ¶ 7).  The National Funds are established by a trust agreement between various employers within the plumbing industry and Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union").  (See id. ¶¶ 6-7, Inscoe Decl.[3] ¶¶ 5, Exs. R and S).

The Union is a labor organization within the meaning of Section 301 of the LMRA, 28 U.S.C. § 185.  (Compl. ¶ 5).  At all relevant times, defendant Vascellaro was party to a series of collective bargaining agreements, project labor agreements, and/or participation agreements with the Union (hereinafter the "CBAs").  (Id. ¶ 9).  Under the CBAs, Vascellaro agreed to be bound by the provisions of various Trust Agreements formed with pension funds, including the National Funds and the Local 1 Funds ("Trust Agreements").  (Id.)  The Trust Agreements permitted the Funds to establish policies, rules, and procedures for the purposes of collecting unpaid contributions to the Funds ("Collection Policies").  (Id. ¶ 10).

According to plaintiffs, the CBAs, Trust Agreements, and Collection Policies required Vascellaro to make hourly contributions to the Funds, as well as to remit Union dues and other payroll withholdings to the Funds, in connection with all work performed within the trade and geographical jurisdiction of the Union.  (Id. ¶ 13; Saraceni Decl.[4] ¶ 14; Inscoe Decl. ¶ 4).  Under the CBAs, Trust Agreements, and Collection Policies, Vascellaro was also required to furnish its books and payroll records when requested to do so by the Funds for audit purposes.  (See Compl. ¶ 15; Saraceni Decl. ¶ 16; Inscoe Decl. ¶¶ 7, 10).

---

[3] Citations to "Inscoe Decl." refer to the Declaration of Toni C. Inscoe, in Support of Motion for Default Judgment, dated October 27, 2021, ECF No. 13.

[4] Citations to "Saraceni Decl." refer to the Declaration of Walter Saraceni, in Support of Motion for Default Judgment, dated November 5, 2021, ECF No. 12.

Under the Trust Agreements and Collection Policies, if Vascellaro refused to permit an audit or give the Funds' auditor access to pertinent records to determine the amount of unpaid contributions, the agreements authorized the Funds to estimate the amount of defendant's delinquent contributions using the estimation protocols specified in the agreements. (Saraceni Decl. ¶¶ 17-18; Inscoe Decl. ¶¶ 8-11). Furthermore, the Trust Agreements and Collection Policies entitle the Funds to interest on unpaid contributions, liquidated damages, and attorney's fees and costs incurred in pursuing collection actions against employers. (Compl. ¶¶ 20-22; Saraceni Decl. ¶ 20; Inscoe Decl. ¶ 15). In addition, the Local 1 Funds' Collection Policy permit the Local 1 Funds to assess an administrative fee of no less than $100 for each time that an employer fails to make its monthly contributions to the Funds. (Saraceni Decl. ¶ 21).

Plaintiffs allege that Vascellaro failed to timely remit benefit contributions to the Funds, breached its obligation to submit to an audit, and has defaulted in this action. Thus, plaintiffs request a default judgment, awarding the Funds $1,226,164.86[5] in damages, plus $4,657.22 in attorneys' fees and costs, for a total of $1,230,822.08. This represents $1,004,546.75 in total damages owed to the Local 1 Funds as follows: (a) estimated contributions of $671,986.64 for the period January 1, 2016 through May 31, 2021, (b) interest thereon of $191,662.78, (c) liquidated damages of $134,397.33, and (d) administrative fees of $6,500. In addition, the NPF seeks $214,523.77 in damages as follows: (a) estimated contributions of $146,059.20 for the period January 1, 2016 through May 31, 2021, (b) interest thereon of $53,858.65, and (c) liquidated damages of $14,605.92. The ITF seeks $7,094.34 in damages as follows: (a)

---

[5] At one point in plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, plaintiffs state that they seek a sum of $1,225,011.95 in delinquent contributions owed to the Funds, including prejudgment interest on the unpaid contributions, liquidated damages, and administrative fees. (ECF No. 16 at 3). However, this appears to be a typographical error, as this sum is inconsistent with the breakdown of damages listed elsewhere in the Memorandum, and plaintiffs are otherwise consistent in seeking $1,226,164.86 in delinquent contributions owed to the Funds, including prejudgment interest, liquidated damages, and administrative fees.

estimated contributions of $4,512 for the period January 1, 2016 through May 31, 2021, (b) interest thereon of $1,679.94, and (c) liquidated damages of $902.40. (Pls.' Mem.[6] at 1, 2-3).

Plaintiffs also seek pre-judgment interest accruing at the rate of 10% per annum on the Local 1 Funds' damages and pre-judgment interest accruing at the rate of 12% per annum on the National Funds' damages from October 28, 2021, through the date that judgment is entered, and post-judgment interest, should any accrue.  (Id. at 13-14).

## DISCUSSION

I.    Default Judgment

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  The Clerk of Court must enter a default when the defendant "has failed to plead or otherwise defend against the instant Complaint."  See Fed. R. Civ. P. 55(a).  After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the moving party may apply for entry of a default judgment.  See Fed. R. Civ. P. 55(b).  The decision to grant a default motion is left to the discretion of the District Court. United States v. Dougherty, No. 15 CV 554, 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), report & recommendation adopted by 2016 WL 4705549 (E.D.N.Y. Sept. 7, 2016).  In this case, the Clerk of the Court entered a default against defendant on August 24, 2021, and the motion for default judgment was filed on November 10, 2021.  (See ECF No. 9, 10).

The Second Circuit has cautioned that default judgment is an extreme remedy that should only be entered as a last resort.  1077 Madison Street, LLC v. New York State Department of

---

[6] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment filed with the Court on November 10, 2021, ECF No. 16.

Taxation and Finance, 19 CV 954, 2019 WL 7593275, at *2 (E.D.N.Y. Nov. 13, 2019).  When determining whether to enter a default judgment, the Court must balance an interest in processing cases expeditiously with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).  Given the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts "should be resolved in favor of the defaulting party."  Id. at 95-96.  As such, courts must take "extreme care" when entering default judgments in order to "avoid miscarriages of justice."  Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993); see also Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

The Court has significant discretion to consider a number of factors when deciding whether to enter a default judgment, including "whether the grounds for default are clearly established," "whether the claims were pleaded adequately in the complaint," and "the amount of money potentially involved."  Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465, 2012 WL 1416924, at *2 (E.D.N.Y. Mar. 15, 2012).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether the plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant."  Id.; see also Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65-66 (2d Cir. 1981).

II.    Entry of Default Judgment

The Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of employee organizations, in accordance with 29 U.S.C. § 1002, and thus the benefit plans are governed by ERISA.  Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the

6

plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Plaintiffs have also alleged a claim under Section 301 of the LMRA, which authorizes the district courts to enforce the terms of the CBAs to which defendant is bound.  See 29 U.S.C. § 185.

Plaintiffs assert that, beginning in October 2019, the Funds' auditors attempted to collect documents from Vascellaro in order to conduct an audit of the company.  (Inscoe Decl. ¶ 16; Moss Decl.[7] Ex. W).  Despite multiple demands from the Funds' auditor, Vascellaro failed to comply with its obligation to provide its books and payroll documents for the auditor's inspection.  (Pls.' Mem. at 1, 2, 4, 5, 8; Compl. ¶ 15; Inscoe Decl. ¶¶ 7, 10, 17; Saraceni Decl. ¶ 16; Moss Decl. Ex. W).  Consequently, the Funds exercised their rights under the agreements and, using the estimation protocols in the Collection Policies and Trust Agreements, conducted their own estimated audit for the period from January 1, 2016 through May 31, 2021, calculating that defendant owes a total of $822,557.84 in estimated contributions.  (Pls.' Mem. at 2, 5, 10).

Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with plaintiffs' motion for default judgment, including the terms of the CBAs, Trust Agreements, and Collection Policies, plaintiffs have sufficiently alleged a claim that the defendant breached its statutory and contractual obligations under both ERISA and the relevant agreements.

Moreover, in this case, it is beyond dispute that defendant is in default since defendant failed to file an answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Court's entry of a default.  See Hirsch v. Innovation Int'l,

---

[7] Citations to "Moss Decl." refer to the Declaration of Patrick Moss in Support of Motion for Default Judgment, dated October 27, 2021, ECF No. 14.

Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement).  Furthermore, defendant has failed to obtain counsel, which constitutes a failure to defend because defendant, a corporation, cannot proceed *pro se* in federal court.  See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only); see also Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney").

Given that plaintiffs have duly served all orders and motions on defendant, and defendant has failed to respond to the Complaint, refused to attend any proceedings in this matter or appear in any way whatsoever with respect to the instant case, this Court respectfully recommends that the District Court grant plaintiffs' motion for default judgment against defendant.  The Court finds no compelling reason to delay the entry of default judgment any longer.

III.   Damage Awards in Default Judgments

Entry of default constitutes the defaulting party's admission of all well-pleaded factual allegations in the complaint pertaining to liability.  Advanced Capital Commercial Group, Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013); see also Greyhoud Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993)  It is well-settled, however, that a party's default does not admit legal conclusions or allegations relating to damages.  See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Education and Training Fund and Other Funds v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).  Consequently, upon concluding that a party is liable for default, the Court's next inquiry is into the extent of the

moving party's damages. MMP Capital, Inc. v. Punyakam, PLLC, 20 CV 01755, 2022 WL 1750434, at *3 (E.D.N.Y. Apr. 5, 2022). The burden falls on the plaintiff to prove damages. See Greyhound Exhibitgroup, Inc., 973 F.2d at 158. This is generally done through an evidentiary proceeding, "although a hearing is not mandatory as long as the Court ensures the plaintiff sets forth a basis for the specified damages." MMP Capital, Inc., 2022 WL 1750434, at *3; see also Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1986) (stating that "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum").

A. Unpaid Contributions

Pursuant to 29 U.S.C. § 1132(g)(2)(A) and the CBAs, plaintiffs seek an award of delinquent contributions. With respect to unpaid contributions, ERISA provides that, when an employer is found to have violated Section 515, the damages awarded to the plaintiff include the amount of unpaid contributions. See 29 U.S.C. § 1132(g)(2). Here, the CBAs also establish the employer's liability for unpaid contributions. (See Saraceni Decl ¶ 19; Inscoe Decl. ¶¶ 8, 11). Specifically, plaintiffs allege that under the CBAs, Vascellaro is liable for contributions owed for the period from January 1, 2016 through May 31, 2021, in the amount of $822,557.84. Of this total, $671.986.64 is owed to the Local 1 Funds and $150,571.20 is owed to the National Funds. (Compl. ¶ 29; Pls.' Mem. at 5, 10).

To estimate the delinquent contributions, plaintiffs used the number of employees employed by Vascellaro under the CBAs as determined by the Union and multiplied that number by the contribution rate and work week established in the CBAs. (Inscoe Decl. ¶ 22; Saraceni Decl. ¶¶ 29-31). Accordingly, having reviewed the declarations submitted by plaintiffs and the Estimated Audit attached to the motion for default judgment (Saraceni Decl. Ex. Q), the Court

respectfully recommends that $671,986.64 be awarded in unpaid contributions to the Local 1 Funds and $150,571.20 be awarded in unpaid contributions to the National Funds for a total of $822,557.84.

    B.  Prejudgment Interest

Under 29 U.S.C. § 1132(g)(2)(B), upon a finding that an employer owes unpaid contributions, plaintiffs seeking to collect the unpaid contributions are entitled to interest on the unpaid contributions "calculated using the rate provided under the plan[.]"

    1.  The Local 1 Funds

Under the Trust Agreement, CBAs and Collection Policies governing the Local 1 Funds, Vascellaro is liable to the Local 1 Funds for interest on the delinquent contributions at an annual rate of 10%.[8]  (Grancio Decl. ¶ 20; Saraceni Decl. ¶ 20).  As noted above, defendant owes the Local 1 Funds $671,986.64 in delinquent payments.  Thus, according to plaintiffs, defendant is liable to the Local 1 Funds for interest on the estimated unpaid contributions owed during the period from January 1, 2016 through May 31, 2021 at the rate of 10% per annum.  Plaintiffs have calculated interest through October 27, 2021,[9] which Mr. Saraceni refers to as "the present date" in his Declaration despite his Declaration having been signed on November 5, 2021. (Saraceni Decl. ¶¶ 34-35, 37, Ex. Q; Pls.' Mem. at 2).  Based on these calculations, plaintiffs seek a total of $191,662.78 in interest owed to the Local 1 Funds during the period of delinquency.  (Saraceni ¶¶ 34, 37, Ex. Q; Pls.' Mem. at 2).

---

[8] While plaintiffs claim that their pre-judgment interest calculations for the Local 1 Funds are compounded annually, they calculate that interest using a simple interest calculation. (Saraceni Decl. ¶¶ 34-35).

[9] Mr. Saraceni claims in a footnote in his declaration that the interest is only calculated through October 2, 2021. (Sacraceni Decl. ¶ 34 n.2).  However, this contradicts his representation in the body of the Declaration that interest was calculated through October 27, 2021.  (Id. ¶ 35).  Moreover, plaintiffs' other filings indicate that interest was calculated through October 27, 2021.  As such, the footnote appears to be the product of a typographical error.

In calculating interest, plaintiffs first calculated the daily amount of interest that accrued on each delinquent contribution and then multiplied that amount by the number of days that each contribution was delinquent. This method of calculating interest on unpaid contributions has been employed in ERISA cases by this Court before. Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO by Christian v. BKS-NY, LLC, No. 18 CV 0256, 2018 WL 4522103, at *9-10 (E.D.N.Y. Aug. 6, 2018); Gesualdi v. Seacost Petroleum Prod., Inc., 97 F. Supp. 3d 87, 102 (E.D.N.Y. 2015); Bricklayers Ins. & Welfare Fund v. Verse Inc., No. 12 CV 4271, 2013 WL 4883966, at *7 n.3 (E.D.N.Y. Sept. 11, 2013).

Plaintiffs provide as an example their interest calculations for the month of January 2016. Plaintiffs estimated that defendant owed $9,833.40 in contributions for the month of January 2016. (Saraceni Decl. ¶ 35). Using the interest calculation method outlined in the Saraceni and Inscoe Declarations, the Court has multiplied the $9,833.40 in delinquent contributions owed for the month of January 2016 by the annual interest rate of 10%, and then divided the product by 365 to yield the daily amount of accrued interest, which is $2.69408219 (which plaintiffs represent as $2.69[10]). Given that contributions for January 2016 were due on February 20, 2016, these contributions were 2076 days late as of October 27, 2021. Multiplying the daily interest rate by the 2076 days that elapsed between when the contributions were due on February 20, 2016 and October 27, 2021 yields a total of $5,592.92 in interest due to the Local 1 Funds for the January 2016 contributions—$.02 less than the $5,592.94 amount calculated by plaintiffs. (See Saraceni Decl. ¶ 35, Ex. Q). Plaintiffs note that they used "rounded figures" in their calculations

---

[10] Although plaintiffs represent this figure as $2.69 in their calculations, it is clear from their conclusion that they used an unrounded figure to a much higher decimal place than they have indicated, such as the number used by the Court, though it is unclear exactly what figure plaintiffs used.

"resulting in slight discrepancies[,]" which might explain the difference between the Court's calculation and plaintiffs' calculation.  (Saraceni Decl. ¶ 35 n.3).

Upon repeating plaintiffs' model calculation for every month that contributions to the Local 1 Funds were delinquent, the Court's results differ from plaintiffs' calculations by no more than a few cents for every monthly contribution except for the May 2021 contribution.[11]  For the May 2021 contribution, plaintiffs calculate in Exhibit Q that the Local 1 Funds are owed $21.86 in interest, whereas the Court calculates that they are owed $391.86.  To reach this figure, the Court multiplied the $11,087.60 in delinquent contributions for the month of May 2021 by the annual interest rate of 10% and divided the product by 365 to yield the daily amount of accrued interest of $3.03769863.  Given that contributions for May 2021 were due on June 20, 2021, these contributions were 129 days late as of October 27, 2021.  Multiplying the daily interest rate by 129 days yields a total of $391.86 in interest due to the Local 1 Funds on the May 2021 contributions.  Since plaintiffs only request $21.86 in interest for the month of May 2021, however, the Court respectfully recommends that they be awarded that lesser amount.

According to the Court's calculations, the Local 1 Funds are owed a total of $192,032.45 in interest, which is $369.67 more than the $191,662.78 in interest that plaintiffs request in their Memorandum of Law supporting their motion for default judgment and in the body of Mr. Saraceni's declaration.  (Pls.' Mem. at 2, 14; Saraceni Decl. ¶ 34).[12]  The Court sees no reason to award plaintiffs a greater amount than what they request, and thus respectfully recommends that the Local 1 Funds be awarded $191,662.78 in interest.

---

[11] The Court's calculations are articulated in the Appendix at the end of this Report and Recommendation.

[12] Plaintiffs' request for a lesser amount of the interest on the May 2021 contributions accounts for the difference between the Court's and plaintiffs' conclusion regarding the total amount of interest that accrued on the unpaid contributions owed to the Local 1 Funds.  Plaintiffs request $191,662.78 despite the spreadsheet attached to Mr. Saraceni's declaration indicating that defendant owed Local 1 Funds $198,162.78 in interest.  (See Saraceni Decl., Ex. Q).  It is unclear to the Court, however, how plaintiffs arrived at $198,162.78 in Exhibit Q.

In addition, plaintiffs also seek an award of pre-judgment interest at the rate of 10% per annum from October 28, 2021, through the date that judgment is entered.  (Pls.' Mem. at 14). Thus, the Court respectfully recommends that plaintiffs be awarded interest from October 28, 2021 through the date that judgment is entered at a rate of 10% per annum.

### 2.  The National Funds

Under the documents and instruments governing the National Funds, Vascellaro owes interest on unpaid contributions to both the NPF and ITF at an annual rate of 12%.  (Compl. ¶¶ 21-22; Inscoe Decl. ¶¶ 24-25).  Plaintiffs allege that defendant owes $146,059.20 in unpaid contributions to the NPF and $4,512 in unpaid contributions to the ITF for a total of $150,571.20.  (Inscoe Decl. ¶ 21, n.3; Pls.' Mem. at 14).  Thus, plaintiffs seek an award of $55,538.59 in interest, representing $53,858.65 in interest accrued on the unpaid contributions owed to the NPF and $1,679.94 in interest on the unpaid contributions owed to the ITF, both calculated using the 12% interest rate set forth in their respective Trust Agreements.  (Inscoe Decl. ¶ 26, Ex. V; Pls.' Mem. at 14).

Plaintiffs again calculate interest on the unpaid contributions by determining the amount of interest that accrued daily on each contribution by multiplying the contributions due per month by the annual interest rate of 12%, and the dividing that product by 365.  (Inscoe Decl. ¶ 25).  Plaintiffs provide the following example of their interest calculations for the National Funds:  Defendant owed the NPF $2,408 in contributions for the month of January, 2016.  (Id.) Plaintiffs thus multiplied that number by 12% to yield total yearly interest of $288.96.  (Id.) Plaintiffs then divided that figure by 365 to render the daily amount of accrued interest of $0.79167123 (which plaintiffs represent at $0.79[13]), and then multiplied that quotient by the

---

[13] Again, it is clear from plaintiffs' conclusions regarding the interest owed that they used an unrounded figure to a much higher decimal place than they represent in their calculations.

number of days that the contributions were late.  (Id.)  Here, the January 2016 contributions were due on February 20, 2016, and were therefore 2076 days late as of October 27, 2021.  (Id.)  Multiplying the daily interest rate $0.79167123 by 2076 yields $1,643.51 in interest due to the NPF for the January 2016 contributions.  (Id.)  Plaintiffs then conducted this calculation for "each and every month" for which they allege a delinquent payment "through May 2021 for both the NPF and ITF."  (Id.)  The Court finds that plaintiffs' method of calculation is correct, though disagrees with the some of the conclusions that plaintiffs have reached.

Upon repeating plaintiffs' model calculation for every month that contributions to the National Funds were delinquent, the Court reaches the same results as plaintiffs for all months from January 2016 through December 2020.  However, for the 2021 contributions, the Court calculates that the NPF is owed $754.28 in interest,[14] whereas plaintiffs calculate this number as $2,195.55 in Exhibit V.  Similarly, the Court calculates that the ITF is owed $22.12 in interest on the 2021 contributions,[15] whereas plaintiffs calculate this number as $64.39 in Exhibit V.  The Court attributes this discrepancy to plaintiffs erroneously adding a full year of accrued interest to each contribution that was due in 2021.

---

[14] The Court's calculations regarding the January through May 2021 contribution to the NPF are as follows:
- January 2021: $2,728.00 * 0.12/365 days = $0.89687671 per day * 249 days = $223.32.
- February 2021: $2,182.40 * 0.12/365 days = $0.71750137 per day * 221 days = $158.57.
- March 2021: $2,182.40 * 0.12/365 days = $0.71750137 per day * 190 days = $136.33.
- April 2021: $2,728.00 * 0.12/365 days = $0.89687671 per day * 160 days = $143.50.
- May 2021: $2,182.40 * 0.12/365 days = $0.71750137 per day * 129 days = $92.56.
- Adding the interest accrued on each month results in a total of $754.28.

[15] The Court's calculations are as follows:
- January 2021: $80.00 * 0.12/365 days = $0.02630137 per day * 249 days = $6.55.
- February 2021: $64.00 * 0.12/365 days = $0.0210411 per day * 221 days = $4.65.
- March 2021: $64.00 * 0.12/365 days = $0.0210411 per day * 190 days = $4.00.
- April 2021: $80.00 * 0.12/365 days = $0.02630137 per day * 160 days = $4.21.
- May 2021: $64.00 * 0.12/365 days = $0.0210411 per day * 129 days = $2.71.
- Adding the interest accrued on each month results in a total of $22.12.

Specifically, plaintiffs mark the January 2021 contributions as having been due February 20, 2020, when they were actually due in February 2021, thus inflating the number of days that elapsed between when the contributions were due and October 27, 2021, the date to which accrued interest was calculated, by a full year.  Similarly, plaintiffs mark the February 2021 contributions as due March 20, 2020, as opposed to March 2021; the March 2021 contributions as due April 20, 2020, as opposed to April 2021; the April 2021 contributions as due May 20, 2020, as opposed to May 2021; and the May 2021 contributions as due June 20, 2020, as opposed to June 2021.  This presumably inflated plaintiffs' calculation of interest accrued on all of the 2021 contributions by increasing the number of days elapsed between each contribution's due date and October 27, 2021 by a full year.  Due to this error in plaintiffs' calculations, the Court respectfully recommends that the National Funds be awarded $54,055.05 in interest, representing $52,417.38 to the NPF and $1,637.67 to the ITF, rather than the $55,538.59 that plaintiffs request.

In addition, plaintiffs request an award of pre-judgment interest on the unpaid contributions to both the NPF and ITF at the rate of 12% per annum from October 28, 2021 through the date that judgment is entered.  (Pls.' Mem. at 14).  Thus, the Court respectfully recommends that plaintiffs be awarded interest from October 28, 2021 through the date that judgment is entered at a rate of 12% per annum.

C.  Post-Judgment Interest

Plaintiffs allege that they are also entitled to post-judgment interest on the full judgment amount under 28 U.S.C. § 1961.  (Pls.' Mem. at 13-14).  Section 1961 states that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal

Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961.

Accordingly, the Court respectfully recommends that plaintiffs be awarded post-judgment

interest under Section 1961, should any accrue.

### D. Liquidated Damages

Under 29 U.S.C. §§ 1132(g)(2)(C), in any ERISA action involving delinquent

contributions "in which a judgment in favor of the plan is awarded," the court is permitted to

award "liquidated damages provided for under the plan in an amount not in excess of 20 percent"

of the unpaid contributions.

#### 1. Local 1 Funds

The CBAs and Collection Policies for the Local 1 Funds impose liquidated damages of

20% of the amount of unpaid contributions due, which plaintiffs calculate as amounting to

$134,397.33. (Saraceni Decl. ¶¶ 20, 34, 37, Ex. Q; Pls.' Mem. at 2, 10). Having reviewed

plaintiffs' calculations, the Court respectfully recommends that the Local 1 Funds be awarded

liquidated damages in that amount.

#### 2. National Funds

The NPF Trust Agreement imposes liquidated damages of 10% of the amount due, which

plaintiffs calculate as amounting to $14,605.92. (Inscoe Decl. ¶¶ 9, 26-27; Pls.' Mem. at 2, 14).

Having reviewed plaintiffs' calculations, the Court respectfully recommends that the NPF Fund

receive $14,605.92 in liquidated damages.

The ITF Trust Agreement imposes liquidated damages of 20% of the amount due, which

plaintiffs calculate as amounting to $902.40. (Inscoe Decl. ¶¶ 12, 26-27; Pls.' Mem. at 2, 14).

Again, after reviewing plaintiffs' calculations, the Court respectfully recommends that the ITF

Fund be awarded $902.40 in liquidated damages.  (Inesco Decl. ¶¶ 27, 28, Ex. V; Pls.' Mem. at 10).

Thus, the Court respectfully recommends that the National Funds be awarded liquidated damages in the amount of $15,508.32, representing $14,605.92 in liquidated damages owed to the NPF and $902.40 in liquidated damages owed to the ITF.

### E.  Administrative Fees

Section 301 of the LMRA allows courts to enforce the terms of a Defendant's CBAs, including the Collection Policy incorporated therein.  29 U.S.C. § 185.  Here, the Fringe Benefit Collection Policy for the Local 1 Funds permits the Local 1 Funds to assess a $100 administrative fee for every month for which the employer failed to pay contributions.  (Saraceni Decl. ¶ 21; Pls.' Mem. at 2, 9).  Plaintiffs seek to collect $6,500 in administrative fees for the period July 1, 2016, through May 31, 2021 (65 months).  (Pls.' Mem. at 10).

Having reviewed the Fringe Benefit Collection Policy for the Local 1 Funds (Saraceni Decl. Ex. N, Art. II, ¶ 6), the Court respectfully recommends that $6,500 be awarded in administrative fees to plaintiffs.

## IV.  Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the CBAs, plaintiffs seek to collect attorney's fees and costs.  With respect to attorney's fees, ERISA provides that, when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs.  29 U.S.C. § 1132(g)(2)(D).  Moreover, the Collection Policies for the Local 1 Funds, the NPF, and the ITF establish an employer's liability for payment of attorney's fees and costs incurred in collecting the delinquent contributions.  (Compl. ¶ 19; Pls.' Mem. at 2).  Plaintiffs request a total award of $4,657.22 in attorney's fees and costs.  (Pls.' Mem. at 3, 11).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees—multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553).  Rather, in "rare circumstances," a court may adjust the

18

lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  Millea v. Metro-North R.R. Co., 658 F.3d at 167.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5, n.8.

The Johnson factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. at 437.  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994) (internal quotation marks omitted)).  To "inform and assist the court

19

in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits. . . .'"  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively."  Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report & recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012).  In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar claims.

Plaintiffs' counsel from Virginia & Ambinder, LLP ("V&A") has submitted detailed contemporaneous billing records, as required by New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  (See Grancio Decl. ¶ 17, Ex. EE). V&A seeks fees for associate attorney Adrianna Grancio, a 2016 law school graduate, at the rate

of $285 per hour to the Funds, as well as for law clerk[16] Maura Moosnick, a 2021 law school graduate, at the rate of $145 per hour to the Local 1 Funds and $125 per hour to the National Funds.  (See Grancio Decl. ¶¶ 18, 19).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rate charged for Ms. Grancio is reasonable.  See, e.g., Trustees of Local 813 Pension Trust Fund v. Rizzo Environmental Services Corp., No. 19 CV 6622, 2020 WL 7249289, at *7-8 (E.D.N.Y. Oct. 31, 2020) (approving hourly rate of $325 for an experienced associate in ERISA default action), R&R adopted, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F.Supp.3d 593, 623 (E.D.N.Y. 2017) (approving a rate of $200 for an associate in ERISA default action); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving a rate of $280 per hour for associates in ERISA litigation), R&R adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a rate of $280 per hour reasonable for an associate in ERISA litigation).

However, the Court finds the rates charged by Ms. Moosnick to be considerably higher than what is typically charged for comparable work by law clerks in this district.  See, e.g., LG Capital Funding, LLC v. 5Barz International, Inc., No. 16 CV 2752, 2019 WL 3082478, at *2

---

[16] A "law clerk" is a "recent law-school graduate who helps a lawyer . . . with legal research, writing, and other tasks." CLERK, Black's Law Dictionary (11th ed. 2019).  In this instance, the term refers to a junior associate who has yet to be admitted to the bar.  Torres v. City of New York, No. 18 CV 03644, 2020 WL 2520665, at *5 (S.D.N.Y. May 18, 2020) (noting that "recent law graduates who have not been admitted to the bar" are "often referred to as Law Clerks").

(E.D.N.Y. July 15, 2019) ("In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals."); Douyon v. N. Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 348 (E.D.N.Y. 2014) (finding an hourly rate of $100 reasonable for a law clerk); Ferrara v. Oakfield Leasing Inc., 904 F. Supp. 2d 249, 274 (E.D.N.Y. 2012) (reducing the rate for law clerks and paralegals from $110 per hour to $90 per hour in an ERISA case); Trustees of Local 7 Tile Industry Welfare Fund v. AM Tile Specialty Construction, No. 19 CV 1809, 2020 WL 7034025, at *12 (E.D.N.Y. Sept. 23, 2020), report and recommendation adopted, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020) (holding that "[i]n ERISA matters, courts in the Eastern District of New York have approved . . . rates ranging from $70 to $90 per hour for paralegals and legal assistants . . . However, courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range").

The Court therefore respectfully recommends that Ms. Moosnick's rate be reduced to $100 per hour, which is comparable to prior awards in this district in cases involving V&A as counsel. See, e.g., Trustees of Elevator Constructors Union Local No. 1 Annuity and 401(k) Fund v. Keystone Iron & Wire Works, Inc., No. 16 CV 239, 2017 WL 9487195, at *6 (E.D.N.Y. Jan. 30, 2017) (reducing the rate for a V&A law clerk to $100 per hour); see also Trustees of Pavers & Road Builders District Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement and Safety Funds v. Triple H Concrete Corp., No. 15 CV 6687, 2018 WL 1178036, at *11 (E.D.N.Y. Feb. 16, 2018) (reducing hourly rate for a first-year V&A law clerk to $100, based on awards in prior cases involving V&A).

Having determined the proper rates, the Court now turns to the reasonableness of the number of hours billed in this matter. See, e.g., LaBarbera v. Empire StateTrucking, Inc., No. 07

CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application, the court should "exclude excessive, redundant or otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).  Based on the contemporaneous billing records submitted to the Court, V&A seeks compensation for 9.316 hours of work by Ms. Grancio and 11.3 hours of work by Ms. Moosnick, for a total of 20.616 hours of work between July 19, 2021, and October 4, 2021.  (See Grancio Decl. ¶ 22, Ex. EE).  V&A's work on this case included drafting the Complaint and drafting plaintiff's Motion for Default Judgment and the materials annexed thereto.  (See Grancio Decl. Ex. EE).

Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the nature and complexity of this case.  Thus, Ms. Grancio is owed a total of $2,655.06, representing 9.316 hours of work at $285 per hour and Ms. Moosnick is owed $1,130, representing 11.3 hours of work at $100 per hour, for a total of $3,785.06 in attorney's fees.  Accordingly, based on the hourly rates set forth above, and the number of hours billed in this matter, the Court respectfully recommends that plaintiffs be awarded $3,785.06 in attorney's fees.

Plaintiffs are also entitled to reimbursement for costs incurred in connection with the collection of delinquent contributions.  See ERISA § 502(g), 29 U.S.C. § 1132(g); Trustees of Empire State Carpenters Annuity v. J&B Paint & Contr., LLC, No. 13 CV 35, 2013 U.S. Dist. LEXIS 126337, at *7 (E.D.N.Y. June 12, 2013).  Included in these costs are filing fees and other court expenses under 29 U.S.C. § 1132(g)(2)(D) and under the terms of the CBAs.  See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. Sept. 2, 2009) (awarding $818.53 in costs for filing fees, service, postage, and photocopying).  Here, plaintiffs seek an award of costs

of $400 representing the filing fee in this matter.  The Court takes judicial notice of the filing fee, see, e.g., Lamaka v. Russian Desserts Inc., No. 18 CV 7354, 2021 WL 2188280, at *17 (E.D.N.Y. Feb. 12, 2021), and thus respectfully recommends that plaintiffs be awarded $400 in costs.

CONCLUSION

The Court respectfully recommends that the District Court award plaintiffs damages in the amount of $1,224,681.32 and $4,185.06 in attorney's fees and costs, reflecting:

   a) $671,986.64 in estimated unpaid contributions owed to plaintiff Local 1 Fund for the period January 1, 2016, through May 31, 2021; $191,662.78 in interest that accrued on that amount accruing from January 1, 2016 through October 27, 2021; $134,397.33 in liquidated damages; $6,500 in administrative fees; and pre-judgment interest at the rate of 10% per annum from October 28, 2021, through the date that this District Court adopts this Report and Recommendation;

   b) $150,571.20 in estimated unpaid contributions owed to plaintiff National Funds for the period January 1, 2016, through May 31, 2021; $54,055.05 in interest that accrued on that amount accruing from January 1, 2016 through October 27, 2021; liquidated damages of $15,508.32; and pre-judgment interest at the rate of 12% per annum accruing from October 28, 2021 through the date that the District Court adopts this Report and Recommendation;

   c) $3,785.06 in attorney's fees and $400 in costs incurred in bringing this action.

The Court also respectfully recommends that the plaintiffs be awarded post-judgment interest at the statutory rate, to the extent that any accrues after entry of judgment in this matter.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 10, 2022

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

# APPENDIX

## Local 1 Funds Interest Calculations

| Contribution Date | Calculation | Accrued Interest |
|---|---|---|
| January 2016 | $9,833.40 * 0.1/365 days = $2.69408219 per day * 2076 days | $5,592.92. |
| February 2016 | $7,866.72 * 0.1/365 days = $2.15526575 per day * 2047 days | $4,411.83 |
| March 2016 | $7,866.72 * 0.1/365 days = $2.15526575 per day * 2016 days | $4,345.02 |
| April 2016 | $10,244.40 * 0.1/365 days = $2.80668493 per day * 1986 days | $5,574.08 |
| May 2016 | $8,195.52 * 0.1/365 days = $2.24534795 per day * 1955 days | $4,389.66 |
| June 2016 | $8,195.52 * 0.1/365 days = $2.24534795 per day * 1925 days | $4,322.30 |
| July 2016 | $10,244.40 * 0.1/365 days = $2.806684932 per day * 1894 days | $5,315.86 |
| August 2016 | $8,195.52 * 0.1/365 days = $2.24534795 per day * 1863 days | $4,183.08 |
| September 2016 | $8,195.52 * 0.1/365 days = $2.24534795 per day * 1833 days | $4,115.72 |
| October 2016 | $10,266.40 * 0.1/365 days = $2.806684932 per day * 1802 days | $5,068.51 |
| November 2016 | $8,213.12 * 0.1/365 days = $2.250169863 per day * 1772 days | $3,987.31 |
| December 2016 | $8,213.12 * 0.1/365 days = $2.250169863 per day * 1741 days | $3,917.55 |
| January 2017 | $10,266.40 * 0.1/365 days = $2.806684932 per day * 1,710 days | $4,809.74 |
| February 2017 | $8,213.12 * 0.1/365 days = $2.250169863 per day * 1,682 days | $3,784.79 |
| March 2017 | $8,213.12 * 0.1/365 days = $2.250169863 per day * 1,651 days | $3,715.03 |
| April 2017 | $10,866.40 * 0.1/365 days = $2.97709589 per day * 1,621 days | $4,825.87 |
| May 2017 | $8,693.12 * 0.1/365 days = $2.381676712 per day * 1,590 days | $3,786.87 |
| June 2017 | $8,693.12 * 0.1/365 days = $2.381676712 per day * 1,560 days | $3,715.42 |
| July 2017 | $10,866.40 * 0.1/365 days = $2.97709589 per day * 1,529 days | $4,551.98 |
| August 2017 | $8,693.12 * 0.1/365 days = $2.381676712 per day * 1,498 days | $3,567.75 |
| September 2017 | $8,693.12 * 0.1/365 days = $2.381676712 per day * 1,468 days | $3,496.30 |
| October 2017 | $11,194.10 * 0.1/365 days = $3.066876712 per day * 1,437 days | $4,407.10 |
| November 2017 | $8,955.28 * 0.1/365 days = $2.45350137 per day * 1,407 days | $3,452.08 |

i

| December 2017 | $8,955.28 * 0.1/365 days = $2.45350137 per day * 1,376 days | $3,376.02 |
| January 2018 | $11,194.10 * 0.1/365 days = $3.066876712 per day * 1,345 days | $4,124.95 |
| February 2018 | $8,955.28 * 0.1/365 days = $2.45350137 per day * 1,317 days | $3,231.26 |
| March 2018 | $8,955.28 * 0.1/365 days = $2.45350137 per day * 1,286 days | $3,155.20 |
| April 2018 | $11,858.10 * 0.1/365 days = $3.248794521 per day * 1,256 days | $4,080.49 |
| May 2018 | $9,486.48 * 0.1/365 days = $2.599035616 per day * 1,225 days | $3,183.82 |
| June 2018 | $9,486.48 * 0.1/365 days = $2.599035616 per day * 1,195 days | $3,105.85 |
| July 2018 | $11,858.10 * 0.1/365 days = $3.248794521 per day * 1,164 days | $3,781.60 |
| August 2018 | $9,486.48 * 0.1/365 days = $2.599035616 per day * 1,133 days | $2,944.71 |
| September 2018 | $9,486.48 * 0.1/365 days = $2.599035616 per day * 1,103 days | $2,866.74 |
| October 2018 | $12,274.60 * 0.1/365 days = $3.36290411 per day * 1,072 days | $3,605.03 |
| November 2018 | $9,819.68 * 0.1/365 days = $2.690323288 per day * 1,042 days | $2,803.32 |
| December 2018 | $9,819.68 * 0.1/365 days = $2.690323288 per day * 1,011 days | $2,719.92 |
| January 2019 | $12,274.60 * 0.1/365 days = $3.36290411 per day * 980 days | $3,295.65 |
| February 2019 | $9,819,68 * 0.1/365 days = $2.690323288 per day * 952 days | $2,561.19 |
| March 2019 | $9,819.68 * 0.1/365 days = $2.690323288 per day * 921 days | $2,477.79 |
| April 2019 | $12,771.10 * 0.1/365 days = $3.498931507 per day * 891 days | $3,117.55 |
| May 2019 | $10,216.88 * 0.1/365 days = $2.799145205 per day * 860 days | $2,407.27 |
| June 2019 | $10,216.88 * 0.1/365 days = $2.799145205 per day * 830 days | $2,323.29 |
| July 2019 | $12,771.10 * 0.1/365 days = $3.498931507 per day * 799 days | $2,795.65 |
| August 2019 | $10,216.88 * 0.1/365 days = $2.799145205 per day * 768 days | $2,149.74 |
| September 2019 | $10,216.88 * 0.1/365 days = $2.799145205 per day * 738 days | $2,065.77 |
| October 2019 | $12,777.70 * 0.1/365 days = $3.500739726 per day * 707 days | $2,475.02 |
| November 2019 | $10,222.16 * 0.1/365 days = $2.800591781 per day * 677 days | $1,896.00 |
| December 2019 | $10,222.16 * 0.1/365 days = $2.800591781 per day * 646 days | $1,809.18 |
| January 2020 | $13,360.14 * 0.1/365 days = $3.660312329 per day * 615 days | $2,251.09 |
| February 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 586 days | $1,715.95 |

| | | |
|---|---|---|
| March 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 555 days | $1,625.18 |
| April 2020 | $13,360.14 * 0.1/365 days = $3.660312329 per day * 525 days | $1,921.66 |
| May 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 494 days | $1,446.56 |
| June 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 464 days | $1,358.71 |
| July 2020 | $13,360.14 * 0.1/365 days = $3.660312329 per day * 433 days | $1,584.92 |
| August 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 402 days | $1,177.16 |
| September 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 372 days | $1,089.31 |
| October 2020 | $13,360.14 * 0.1/365 days = $3.660312329 per day * 341 days | $1,248.17 |
| November 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 311 days | $910.69 |
| December 2020 | $10,688.11 * 0.1/365 days = $2.928249315 per day * 280 days | $819.91 |
| January 2021 | $13,859.50 * 0.1/365 days = $3.797123288 per day * 249 days | $945.48 |
| February 2021 | $11,087.60 * 0.1/365 days = $3.03769863 per day * 221 days | $671.33 |
| March 2021 | $11,087.60 * 0.1/365 days = $3.03769863 per day * 190 days | $577.16 |
| April 2021 | $13,859.50 * 0.1/365 days = $3.797123288 per day * 160 days | $607.54 |
| May 2021 | $11,087.60 * 0.1/365 days = $3.03769863 per day * 129 days | $391.86 |
| **TOTAL:** | | $192,032.45 |